**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

**CASE NO.:** CV 10-07153 SJO (AJWx)   **DATE:** June 16, 2011

**TITLE:** American Federation of Television and Radio Artists, AFL-CIO v. Sordid Productions, et al.

================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                           Not Present
Courtroom Clerk                            Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**         **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                Not Present

================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** [Docket No 17]

The matter is before the Court on Plaintiff American Federation of Television and Radio Artists, AFL-CIO's ("AFTRA") Motion for Default Judgment ("Motion"), filed on April 4, 2011. (Docket No. 17.) Defendants Sordid Productions, LLC ("Sordid") and Once Upon a Time Films, Ltd. ("OUATF") (collectively, "Defendants") have failed to file an opposition or otherwise respond in any manner. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for May 9, 2011. *See* Fed. R. Civ. P. 78(b). For the following reasons, Plaintiff's motion is GRANTED.

I.      FACTUAL AND PROCEDURAL BACKGROUND

AFTRA is a labor organization representing employees in industries affecting interstate commerce within the meaning of section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. At all relevant times, AFTRA has been the authorized exclusive bargaining representative of certain employees of the Defendants. (Compl. ¶ 2.) Defendants Once Upon A Time and Sordid allegedly operated as a single entity and were a single employer. Plaintiff avers that Once Upon A Time is the alter ego of Sordid. (*Id.* ¶ 8.)

Plaintiff claims that, at all relevant times, Sordid has been a signatory to and bound by a collective bargaining agreement with AFTRA ("Basic Cable Agreement") and a letter of adherence ("letter of adherence") (collectively, "Agreements"). (Compl. ¶ 6.) The Basic Cable Agreement covers the first season of the dramatic series titled "Sordid Lives" ("Series"). (*Id.* Ex. 1.) Paragraph 7 of the Basic Cable Agreement includes an arbitration provision which states:

> It is expressly understood and agreed that any dispute between Producer and AFTRA or between Producer and any and all performers under this Agreement,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 10-07153 SJO (AJWx)          DATE:  June 16, 2011

shall be submitted to arbitration in accordance with the provision set forth in Paragraph 95 of the AFTRA Network Television Code.

(*Id.* ¶ 7, Ex. 1.) On September 4, 2010, AFTRA filed its Complaint to compel arbitration, pursuant to section 301(a) of the LMRA, 29 U.S.C. § 185(a), section 7 of the Basic Agreement, paragraph 2 of the letter of adherence, and paragraph 95 of the Television Code.  Plaintiff alleges that Defendants refused to pay residual compensation for: (1) sale of DVD's; and (2) foreign exhibition, late payment penalties, and health and retirement contributions, despite written demands by AFTRA. (*Id.* ¶ 9.)  Plaintiff further alleges that Defendants' have refused to submit to arbitration in bad faith, and solely for the purpose of delaying and causing AFTRA to incur legal fees and costs. (*Id.* ¶ 13.)

Plaintiff filed a Request for Clerk to Enter Default on December 2, 2010.  The Clerk of the Court entered default on December 3, 2010.  Plaintiff filed a Notice of Motion for Default Judgment against Sordid on January 1, 2011.  Plaintiff re-filed the instant Motion on April 4, 2010.[1]

II.     Discussion

    A.     Legal Standard for Default Judgment

To obtain default judgment, a plaintiff must satisfy the procedural requirements of the Federal Rule of Civil Procedure ("Rule") 55 and show that the substantive factors outlined in *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986), favor default judgment.

    B.     Procedural Requirements for Default Judgment

Obtaining default judgment is a two-step process.  First, the plaintiff must establish default by affidavit or otherwise, and if established, the clerk enters defendants' default.  *See* Fed. R. Civ. P. 55(a).  Second, the plaintiff must request entry of default judgment if the plaintiff's claim is for an amount that is not certain and is incapable of being made certain by computation.  *See* Fed. R. Civ. P. 55(b)(2). The plaintiff's motion for default judgment must include a declaration showing the following:

          (1)     when and against what party default was entered;
          (2)     the pleading to which default was entered;

---

[1] The Court denied Plaintiff's Motion for Default Judgment on March 29, 2011, for failure to satisfy the procedural requirements of Federal Rule of Civil Procedure 55(b) and to adequately address the substantive factors in *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986). (Order, Mar. 29, 2011, at 2.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 10-07153 SJO (AJWx)  DATE: June 16, 2011

> (3) that the defaulting party is not an infant or incompetent person;
> (4) that the defaulting party is not in military service such that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and
> (5) that notice has been served on the defaulting party, if the defaulting party has appeared in the action or if the damages sought are unliquidated

L.R. 55-1; *see also* Fed. R. Civ. P.55(b)(2).

The instant Motion shows that: (1) default was entered against Defendants Sordid and OUATF on December 3, 2010 (Decl. of William Sheh in Supp. of Mot. to Compel Arbitration ("Sheh Decl.") ¶ 6); (2) default was entered as to the Complaint (*id.* ¶ 4); (3) Defendants are not infants or incompetent persons (*id.* ¶¶ 3, 4); (4) Defendants are not in military service (*id.*); and (5) Plaintiff notified Defendants of the Motion (*id.*).

Accordingly, Plaintiff satisfies the procedural requirements for entry of default judgment.

   C. Substantive Requirements for Default Judgment: The *Eitel* Factors

To grant or deny default judgment is within the Court's discretion. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising this discretion, the Court considers:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure on the merits.

*Eitel*, 782 F.2d at 1471-72. Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. *See* Fed. R. Civ. P. 8(b)(6); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

     1. Possibility of Prejudice to Plaintiff

Under the first *Eitel* factor, the Court examines whether Plaintiff will be prejudiced if the request for entry of default judgment is denied. *Eitel*, 782 F. 2d at 1471. Here, Plaintiff contends that to date, Defendants have refused to pay residual compensation for the sales of DVD's, foreign exhibitions, late payment penalties, and health and retirement fund contributions, as required by the Agreements. (Compl. ¶9.) Plaintiff further contends that Defendants refuse and will continue

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 10-07153 SJO (AJWx) | **DATE:** June 16, 2011 |

to refuse to arbitrate the matter unless ordered by this Court to arbitrate. (*Id.*) If default judgment is denied, Plaintiff contends that AFTRA will be left with no other avenue of relief. (Mem. P. & A.12:14-22.)

Accordingly, this *Eitel* factor weighs in favor of an entry of default judgment.

### 2. Sufficiency of Complaint and Likelihood of Success on the Merits

The second and third factors focus on the merits of the plaintiff's substantive claims and the sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471. The plaintiff is required to "state a claim on which the plaintiff may recover." *See PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1175-76 (C.D. Cal. 2002).

#### a. Claim One: Compel Arbitration

The Federal Arbitration Act ("FAA") was enacted to "advance the federal policy favoring arbitration agreements." *Lowden v. T-Mobile USA, Inc.*, 512 F. 3d 1213, 1217 (9th Cir. 2008). Federal courts are required to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Under the FAA, the Court, not the arbitrator, must decide whether a particular dispute is arbitrable. *See* 9. U.S.C. § 4 (2006). The court's role is limited "to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostics Sys., Inc.*, 207 F. 3d 1126. 1130 (9th Cir. 2000). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id*. The court must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmonth Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).

##### i. A Valid Agreement to Arbitrate Exists.

In the instant Motion, Plaintiff contends that a valid Agreement exists between Plaintiff and Sordid because the Basic Cable Agreement and the letter of adherence are in writing. (*See* Mem. P. & A. 4:23-5:8.)

The FAA provides that written arbitration agreements, in a contract concerning a transaction involving interstate commerce, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Contract defenses "such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [9 U.S. C.] § 2." *Nagrampa v. Mailcoups, Inc.*, 469 F. 3d 1257, 1268 (9th Cir. 2006) (quotations omitted). "[T]he burden of proof is on the party asserting

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 10-07153 SJO (AJWx) | **DATE:** June 16, 2011 |

jurisdiction and contesting arbitration." *Edwards v. Metro Life Ins. Co.*, No. C 10-03755, 2010 WL 509553, at *4 (N.D. Cal. Dec. 6, 2010). "Where there are 'any doubts' concerning the arbitability of claims, a court should resolve the dispute in favor of arbitration." *Id.*; *see also Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148 (9th Cir. 2008) (holding that the burden is on the party opposing arbitration).

Plaintiff provides the Basic Cable Agreement, a written contract that contains an arbitration agreement. (Compl. Ex. 1)  The Basic Cable Agreement concerns the production of a television series, and therefore, involves interstate commerce.  Defendants have not provided defenses to invalidate the agreement.

Accordingly, a valid agreement to arbitrate exists between Plaintiff and Sordid.

>    ii.   <u>Plaintiff's Arbitration Agreement Encompasses the Dispute at Issue</u>.

After the Court finds that a valid agreement to arbitrate exists, the next step is to determine whether the agreement encompasses the dispute at issue.  *Chiron Corp.*, 207 F. 3d at 1130.  In doing so, the court must be cognizant of the FAA's policy favoring arbitration agreements:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the language itself or an allegation of waiver, delay, or a like defense of arbitability.

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 , 24-25 (1983).  Accordingly, the court's role is "strictly limited to determining arbitability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator."  *Republic of Nicaragua v. Standard Fruit Co.*, 937 F. 2d 469, 478 (9th Cir. 1991).

The Agreements state that "[i]t is expressly understood and agreed that any dispute between Producer and AFTRA . . . shall be submitted to arbitration." (Compl. ¶¶ 6-8; Besbris Decl. In Supp. of Pl.'s Mot. for Default J. ("Besbris Decl.") Ex. 1.)  This dispute arises out of the meaning and application of the Agreements.  Plaintiff avers that, pursuant to section 7 of the Basic Agreement, its demand to compel arbitration "is based on the Employer's refusal to pay residual compensation for (1) sale of DVD's and (2) foreign exhibition, late payment penalties, and health and retirement fund contributions . . . in connection with the Series." (Compl. ¶ 9.)  As such, the Agreements encompass the dispute at issue.

Accordingly, Sordid is bound by the Agreements to arbitrate the instant dispute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 10-07153 SJO (AJWx)          DATE: June 16, 2011

### iii. Plaintiff's Alter Ego Claim

A court balances several factors when determining whether two companies are alter egos: "(1) centralized control of labor operations, (2) common management, (3) interrelation of operations, and (4) common ownership and financial control." *J.M. Tanaka Constr., Inc. v. N.L.R.B.*, 675 F.2d 1029, 1033 (9th Cir. 1982).

Plaintiff asserts that OUATF was a major source of capital for the Series, and that OUATF made residual payments on behalf of SORDID to the writer and director of the Series. (Mot. 6:27-7:5.) Plaintiff further asserts that OUATF and SORDID shared the same owner, and that they were interchangeably held out as the employer for the Series. (*See* Compl. ¶ 8.) Plaintiff also posits that in a prior arbitration between AFTRA and OUATF and SORDID involving a separate grievance, OUATF and SORDID stipulated in that arbitration that they were alter egos. (Mot. 7:19-21.) These factual allegations, which the Court must construe as true, establish that the two companies have common ownership and financial control, common management, and operations that are interrelated.

Accordingly, OUATF and SORDID are alter egos and OUATF is similarly bound by the arbitration agreement. The second and third *Eitel* factors weigh in favor of default judgment.

### 3. The Sum of Money at Stake in the Action

The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness of Defendants' conduct. *Cal. Sec. Cans*, 238 F. Supp. 2d at 1176.

In the instant Motion, the amount owed to Plaintiff is unknown because Defendants have refused to arbitrate the grievance, and because Defendants were or are in possession of the records needed to calculate the damages. (Mem. P. & A. 5:22-26; Besbris Decl. ¶ 6.)

Accordingly, the fourth *Eitel* factor is unhelpful.

### 4. Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of a dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. Upon entry of default judgment, all well-pled facts in the complaint are taken as true except those relating to damages. *Geddes*, 559 F. 2d at 560; *see also Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1978).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 10-07153 SJO (AJWx)          DATE:  June 16, 2011

Here, Plaintiff filed a well-pled Complaint alleging facts sufficient to prevail on its claim.  The Defendants failed to oppose the Complaint and the Motion.  For this reason, the Court is satisfied that there is no genuine dispute as to any material facts for Plaintiff's claim.

Accordingly, this factor favors an entry of default judgment.

### 5. Possibility of Excusable Negligence

The sixth *Eitel* factor examines whether Defendants' failure to respond to Plaintiff's allegations is the result of excusable neglect.  *Eitel*, 782 F.2d 1472.

Here, Defendants were properly served with a copy of the Summons and Complaint.  (Mem. P. & A. 8:15-16; Sheh Decl. ¶ 2.)  Defendants made no effort to challenge the Complaint or appear. (Mem. P. & A. 8:17-18; Sheh Decl. ¶ 2.)  More than eight months have elapsed since the Complaint was filed on September 24, 2010, and Defendants have proffered no explanation for excusable negligence. (*See* Docket No. 1.)

Accordingly, the sixth *Eitel* factor weighs in favor of an entry of default judgment

### 6. Possibility for Deciding on the Merits

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment.  *Eitel*, 782 F.2d at 1472.  In *Eitel*, the Ninth Circuit stated that "[c]ases should be decided on their merits whenever reasonably possible."  *Id*.  Courts, however, have recognized that "the mere existence of [Rule 55(b)] indicates that this preference, standing alone, is not dispositive."  *Cal. Sec. Cans.*, 238 F. Supp. 2d at 1177 (internal quotations omitted).  "Moreover, defendants' failure to answer plaintiff['s] Complaint makes a decision on the merits impractical, if not impossible."  *Id*.  Under Rule 55(a), "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."  *Id*.

For the instant action, AFTRA has established that Defendants violated the Agreements, the Agreements require arbitration, and Defendants were the alter egos of one another or a single employer with respect to the Series.  (Mot. 9:2-8; Besbris Decl. ¶¶ 4-7, Exs. 1-4.)  Hence, both Sordid and OUATF are bound to arbitrate under the terms of the Agreements.  Moreover, because Defendants have failed to file an answer or an opposition to the instant Motion, Defendants have failed to defend this action.

Accordingly, this *Eitel* factor weighs in favor of granting default judgment.

///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 10-07153 SJO (AJWx)    **DATE:** June 16, 2011

    D.    REMEDIES

Under Rule 54(c), only relief prayed for in the complaint may be awarded to plaintiffs in a default. *See* Fed. R. Civ. P. 54(c). The Ninth Circuit has held that "the award of fees is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration." *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1383 (9th Cir. 1984). The Ninth Circuit has relaxed the standard for imposing attorney fees "in the context of labor arbitration" because "[e]ngaging in frivolous dilatory tactics not only denies the individual prompt redress, it threatens the goal of industrial peace." *Int'l Union of Petroleum & Indus. Workers v. Western Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983). Pursuant to Rule 54(d)(2), the amount of attorney fees may be determined by a separate motion filed after judgment is entered. Fed. R. Civ. P. 54 (d)(2).

Plaintiff requests attorney fees and bill of costs in its Complaint. (Compl. 6:1.) Plaintiff asks for 21 days to file a separate motion for attorney fees and bill of costs after judgment is entered. The Court GRANTS Plaintiff reasonable attorney fees and bill of costs. Plaintiff should review the Schedule of Attorneys' Fees listed under Local Rule 55-3. *See* L.R. 55-3.

III.    RULING

For the foregoing reasons, Plaintiff's Motion for Default Judgment to Compel Arbitration is **GRANTED**. Plaintiff must file a motion for attorney fees and bill of costs within 21 days from the issuance of the instant order. Failure to do so will result in a denial of attorney fees and bill of costs.

IT IS SO ORDERED.